IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MONTE THOMAS, PERSONAL REPRESENTATIVE OF THE ESTATE OF CRAIG ALLEN SUTHERLAND,<br><br>                              Plaintiff,<br><br>v.<br><br>LYNNE GLASER SUTHERLAND and THE MCGRAW-HILL COMPANIES, INC.,<br><br>                              Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-01000-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiff Monte Thomas, as personal representative of the estate of Craig Allen Sutherland, brings this action arising from McGraw-Hill Companies Inc.'s ("McGraw-Hill") refusal to distribute $150,000 from Lynne Glaser Sutherland's 401(k), pursuant to the state court's issuance of a qualified domestic relations order ("QDRO") as required under ERISA. Plaintiff contends that McGraw-Hill's refusal to accept the state court's QDRO is improper. Plaintiff seeks, among other things, a declaration that the state court order was a proper and valid QDRO, and an order that McGraw-Hill must pay Craig Allen Sutherland's estate $150,000 from Ms. Sutherland's 401(k). Plaintiff also alleges that Ms. Sutherland breached the terms of the Decree of Divorce by failing to consent to McGraw-Hill's distribution of the funds to Mr. Sutherland. Plaintiff contends that she both breached the contract and is in contempt of the state court order. Now before the court are cross-motions for summary judgment by Plaintiff and Ms.

1

Sutherland. For the reasons discussed below, the court finds that the state issued order was a valid QDRO as of the day it was first issued by the state court. The court also concludes that the claims against Ms. Sutherland fail. McGraw-Hill is further ordered to show cause why it should not be required to pay for Plaintiff's attorney fees for the first cause of action on the ground that its refusal to accept the QDRO was arbitrary and capricious.

## FACTUAL BACKGROUND

Plaintiff brings this action on behalf of the estate of Mr. Sutherland. Plaintiff seeks to collect $150,000 from the 401(k) plan of Mr. Sutherland's ex-wife, Lynne Glaser Sutherland. While married, McGraw-Hill was Ms. Sutherland's employer. Plaintiff has named McGraw-Hill as a defendant because it is the administrator of the 401(k) plan and controls the funds at issue.

None of the relevant facts are in dispute. In November 2006, Ms. Sutherland initiated divorce proceedings against Mr. Sutherland in Utah state court. As part of the settlement agreement disposing of marital property, Ms. Sutherland agreed that Mr. Sutherland would receive $150,000 from her 401(k) plan held by McGraw-Hill. On July 11, 2007, the state court issued an order that it stated and determined to be a QDRO, allowing for the $150,000 award to Mr. Sutherland. Mr. Sutherland sent the state order to McGraw-Hill on July 19, 2007. On August 7, 2007, McGraw-Hill sent a letter to Mr. Sutherland in which it refused to recognize the QDRO because the order did not expressly state on its face that it was made pursuant to state domestic relations law. Such a statement is part of McGraw-Hill's internal policy, defining what it will recognize as a QDRO under ERISA. In response, counsel for Mr. Sutherland wrote to McGraw-Hill explaining in detail why the state court order met the requirement under ERISA for a QDRO. On September 6, 2007, an amended QDRO was signed by the state court that stated

2

that the order was intended to be a QDRO under ERISA and federal tax code. Counsel for Mr. Sutherland presumably provided a copy of the amended QDRO to McGraw-Hill.

Mr. Sutherland died on October 27, 2007. On December 11, 2007 and January 3, 2008, McGraw-Hill sent two letter to Mr. Sutherland's estate refusing to acknowledge that the September 6, 2007 order was a valid QDRO because it did not state on its face that is was issued pursuant to state domestic law. McGraw-Hill also asserted that because Mr. Sutherland had died, he no longer qualified as an "alternate payee" under the QDRO sections of ERISA and the tax code, and could not be paid benefits from the 401(k) plan.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

The parties' motions for summary judgment will be granted, only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Although "[t]he movant has the burden of showing that there is no genuine issue of fact," the other party "is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Id*. at 249.

### II. FIRST CAUSE OF ACTION AGAINST DEFENDANT MCGRAW-HILL[1]

McGraw-Hill asserts that it rejected the state court's original and amended QDROs because they failed to state that they were issued pursuant to state domestic relations law, as required by ERISA. *See* 29 U.S.C. 1056(d)(3)(B)(ii)(II), ERISA § 206(d)(3)(B)(ii)(II).

---

[1] The First Cause of Action for declaratory relief is stated to be against all Defendants. Although the relief sought is directed against McGraw-Hill, the court will regard Ms. Sutherland as an intervenor under Fed. R. Civ. P. 24(a)(2) because the outcome of this case would affect her interest as a plan participant.

3

McGraw-Hill argues that a plan administrator may be responsible for determining whether state orders from multiple states are QDROs. McGraw-Hill then notes that "[w]ith this concern in mind," the QDRO Administration Guide – The McGraw-Hill Companies, Inc. (the "Guide") requires that a domestic relations order "must state that it is being issued pursuant to state domestic relations law [and] should reference some state authority or code." (McGraw-Hill Response Pl.'s Mot. Summ. J., 3) (Dkt. No. 25). The question before the court is whether McGraw-Hill can refuse to honor a state ordered QDRO because it fails to comply with the company's own internal guidelines, which impose requirements not required by ERISA.

Under 26 U.S.C. § 414(p)(1)(B), a "domestic relations order" ("DRO") is "any judgment, decree, or order (including approval of a property settlement agreement) which (i) relates to . . . marital property rights to a spouse [or] former spouse, and (ii) is made pursuant to a State domestic relations law (including a community property law)." For the DRO to be qualified, the DRO must "[create] or [recognize] the existence of an alternate payee's right to, or assign[] to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(B)(i)(I).[2]

Nothing in those provisions requires that a QDRO must "state that it is being issued pursuant to state domestic law" or "should reference some state authority or code." Nor are these requirements imposed by any other regulation under ERISA. They are a complete creation of McGraw-Hill. Moreover, nothing before the court suggests that McGraw-Hill had the authority to add additional requirement to the statutory language governing QDROs, or reject a

---

[2] It is important to note that McGraw-Hill offers no other challenges regarding the QDRO's validity under § 1056(d).

4

state issued QDRO because the order did not match an internal policy meant to reflect the governing statutory language.[3]

In this case, the state court stated and determined that the orders dated July 11, 2007 and September 6, 2007 were QDROs. McGraw-Hill should have considered the state court order as prima facie evidence that the requirements of the QDRO had been met. It is not the role of McGraw-Hill to second guess a court's judgment and ignore the court's determination and order. Indeed, there can be no clearer legal determination that a particular order is a QDRO than a court of proper jurisdiction stating that such an order is, indeed, a QDRO. *See generally, Mack v. Kuckenmeister*, 619 F.3d 1010, 1020-21 (9th Cir. 2010) (finding that the Nevada state court properly concluded that a DRO was a QDRO prior to a determination by the administrator). And because McGraw-Hill did not reject the QDRO on statutory language but on its own extraneous requirements, the rejection was arbitrary and capricious.[4] Accordingly, McGraw-Hill is ordered to proceed with proper execution of the QDRO as it should have done on the date of the QDRO's effectiveness, that being July 11, 2007.

---

[3] "Primary responsibility for determining whether a DRO is a QDRO that establishes obligations for an ERISA plan rests with the plan itself." *Trs. Of the Dirs. Guild of America – Producer Pension Benefits Plan v. Tise*, 234 F.3d 415, 420 (9th Cir. 2000). Indeed, ERISA requires "[e]ach plan [to] establish reasonable procedures to determine the qualified status of [DROs] and to administer distributions under such qualified orders. 29 U.S.C. § 1056(d)(3)(G)(ii). In as much the plan administrator must consider whether a DRO is qualified, it has the authority to establish such procedures. It appears that McGraw-Hill's policies were structured to comply with §1056(d). In this case, however, McGraw-Hill failed to comply with ERISA because the QDRO was already issued by the state court. Rather than recognize the QDRO, McGraw-Hill treated it as a DRO and improperly applied its qualifying procedures.

[4] With regard to benefit determinations by fiduciaries or plan administrators, the Supreme Court has held that a denial of benefits challenge under 29 U.S.C. § 1332(a)(1)(B) is reviewed under a de novo standard unless the benefit plan grants the administrator or fiduciary discretion in determining eligibility for benefits or to construct the terms of the plan, where in such a case the abuse of discretion standard applies. *See Hogan v. Raytheon*, 302 F.3d 854, 857 (8th Cir. 2002) (citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 111 (1989)). Although the parties do not state what level of discretion the benefit plan has granted the administrator, the issue before the court does not concern the eligibility or an interpretation of the terms under the plan, but rather the "meaning of a separate document," namely the QDRO as issued by the state court. *See Id*. As such, a de novo standard should apply. In any event, McGraw-Hill's decision is arbitrary and capricious because it is not a reasonable interpretation of the plan's terms. *See Semtner v. Group Health Serv. Of Okla.*, 129 F.3d 1390, 1393 (10th Cir. 1997).

McGraw-Hill's second contention is that because Mr. Sutherland died before the distribution of the amount required by the QDRO, he cannot be an alternate payee. Because of Mr. Sutherland's status as an alternate payee is now in question, McGraw-Hill is unclear about whether it can distribute the funds to his estate. (McGraw-Hill Mem. Response Pl.'s Mot. Summ. J., 4.) McGraw-Hill again references its Guide, which states that "if an AP dies after Receipt of a DRO but before the DRO is qualified, deny the DRO; there is no valid AP." (McGraw-Hill Mem. Response Pl.'s Mot. Summ. J., 4.) Reliance on the policy in this instance, however, is misplaced.

It is true that a QDRO is "a domestic relations order which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternative payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan . . . ." 29 U.S.C. § 1056(d)(3)(B)(i). It is also true that "alternate payee" is defined as a "spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to a participant." 29 U.S.C. § 1056(d)(3)(K). McGraw-Hill's contention fails, however, because Mr. Sutherland did not die "after receipt of a DRO but before the DRO [was] qualified." *See* (McGraw-Hill Mem. Response Pl.'s Mot. Summ. J., 4.) Rather, the DRO was both qualified by the state court in its issuance of the original QDRO, and issued prior to Mr. Sutherland's death. There is, therefore, no reason to conclude that the enforceability of the QDRO changed simply because McGraw-Hill failed to timely perform its administrative duty.

Although there is no case law precisely on point, the supporting material suggests that this is the appropriate result.[5] The Code of Federal Regulations provides that a DRO does not

---

[5] Other cases have taken pragmatic approaches in deciding similar issues. The United States District Court for the Northern District of California found, for example, that despite the technical definition of an "alternate payee," an

6

fail to be treated as a QDRO solely because of the time at which it is issued. 29 C.F.R. 2530.206(c)(1). This includes orders issued after the participant's death, and occasions where a divorced spouse no longer meets the technical definition of a "surviving spouse" under the terms of the plan. 29 C.F.R. 2530.206(c)(1)(ex. 1 & 2). In addition, the Eighth Circuit has found that a domestic relations order can be qualified posthumously if notice is given and the order is filed during the eighteen-month period permitted under ERISA to secure a QDRO. *Hogan v. Raytheon*, 302 F.3d 854, 857 (8th Cir. 2002). Although different than the case at hand, the trend has been to enforce the terms of an otherwise valid QDRO as it was intended to be enforced, so long as notice was given and the order was filed during the period permitted under ERISA. With this understanding, the change in Mr. Sutherland's technical status as an alternate payee cannot be considered fatal to the enforcement of the QDRO by his estate. Accordingly, Plaintiff's motion for summary judgment on the First Cause of Action against Defendant McGraw-Hill is granted.[6]

Plaintiff also names Ms. Sutherland as a defendant in the First Cause of Action. To the extent that the court's declaration that an enforceable and valid QDRO was issued against a legal interest of Ms. Sutherland, Plaintiff's motion for summary judgment on the First Cause of Action against her is also granted.[7]

---

unmarried companion of the participant could still qualify. *Trs. Of the Dirs. Guild of America – Producer Pension Benefits Plan v. Tise*, 234 F.3d 415, 420 (9th Cir. 2000).
[6] Because the court finds that the original QDRO was effective and erroneously disregarded by McGraw-Hill, Plaintiff's *nunc pro tunc* argument is moot.
[7] Ms. Sutherland has raised a variety of other arguments in defense of the status quo and the previous determination of McGraw-Hill. Regardless of any right Ms. Sutherland has to bring a civil action under ERISA, however, there is a question of whether she can raise defenses regarding the administration of the plan, which McGraw-Hill has selected not to raise itself. In any event, issues surrounding the timeliness of the complaint or the substantive legal merits of the underlying QDRO, for instance, would be difficult to argue where McGraw-Hill has failed to follow their own internal procedures and thereby put Plaintiff on notice of any time-barring provisions.

## III. SECOND, THIRD, AND FOURTH CAUSES OF ACTION AGAINST DEFENDANT MS. SUTHERLAND[8]

Plaintiff brings three other causes of action against Defendant Ms. Sutherland alleging that that she defied the Decree of Divorce and the state court order by refusing to consent to McGraw-Hill's distribution of the disputed funds to Plaintiff. Plaintiff asserts that "McGraw-Hill [had] consented to [paying the Estate $150,000] on the condition that Lynne Sutherland agrees to the same in writing." (Pl.'s Mot. Summ. J., 2) (Dkt. No. 23-1). Plaintiff further contends that Ms. Sutherland's consent was required under the contractual language agreed to by Mr. and Ms. Sutherland, which states that "[e]ach party is ordered to execute any documents and perform any acts necessary to effectuate and carry out the terms of [the] Decree of Divorce." (Pl.'s Mot. Summ. J., Ex. B, 3) (Dkt. No. 23-1, 34). Plaintiff argues that Ms. Sutherland refused to consent to the release of funds, and thereby breached the Decree of Divorce and failed to comply with the state court's order. Moreover, Plaintiff argues that the refusal to comply with McGraw-Hill's request for such consent has left her unjustly enriched. (Compl., ¶ 84) (Dkt. No. 2).

Before the court can find that Ms. Sutherland violated the Decree of Divorce, it must first be satisfied that her consent would have actually released the funds. The only evidence cited by Plaintiff on this matter is the declaration of Plaintiff's counsel, Mr. Nathan Miller, in which he stated that "it was my understanding that McGraw-Hill would release the $150,000 to the Estate if Lynne Sutherland would consent to the release." (Pl.'s Mot. Summ. J., Ex. F, 2) (Dkt. No. 23-1, 80). This evidence lacks foundation and will not be considered. Moreover, because the court has ruled that McGraw-Hill is required to distribute the funds, Plaintiff's claims against Ms.

---

[8] The court will exercise supplemental jurisdiction over the state claims against Ms. Sutherland pursuant to 28 U.S.C. § 1367, in that these claims derive from a common nucleus of operative fact. *See Price v. Wolford*, 608 F.3d 698, 703 (10th Cir. 2010).

Sutherland are now moot. The court will neither grant an injunction requiring Ms. Sutherland to consent to the payment of the funds, find that she is in breach of the Decree of Divorce, nor hold her in contempt on these grounds. The court denies as moot Plaintiff's motion for summary judgment on his second, third, and fourth causes of action against Ms. Sutherland. Ms. Sutherland's corresponding motion is also denied as moot.

## CONCLUSION

For the reasons stated herein, the court finds the following:[9]

First: Plaintiff's motion for summary judgment regarding the First Cause of Action against Defendants is GRANTED.

Second: Plaintiff's motion for summary judgment on the Second, Third, and Fourth Causes of Action against Ms. Sutherland are DENIED as moot.

Third: Ms. Sutherland's cross-motion motion for summary judgment on the First Cause of Action is DENIED.

Fourth: Ms. Sutherland's cross-motion motion for summary judgment on the Second, Third, and Fourth causes of action are DENIED as moot.

Fifth: Under ERISA, attorney's fees may be awarded to either party at the discretion of the district court. 29 U.S.C. § 1132(g). McGraw-Hill is ordered to show cause why it should not be required to pay for Plaintiff's attorney fees for the first cause of action on the ground that its refusal to accept the QDRO was arbitrary and capricious.

Sixth: The court will not award any other damages, including interest, until it receives a stipulated agreement from the relevant parties or additional

---

[9] (Pl.'s Mot. Summ. J.) (Dkt. No. 23), (Lynn Sutherland's Cross-Mot. Summ. J.) (Dkt. No. 30).

briefing citing the relevant statutes providing for such damages and the relevant interest rate. Plaintiff is to file an affidavit of costs and attorney's fees, and such a stipulation or briefing no later than 20 days from the date of this order or additional costs will be denied and the action closed. McGraw-Hill will then have 10 days to respond.

DATED this 1st day of March, 2011.

BY THE COURT:

_____

Clark Waddoups
United States District Court Judge